We have your case. Brooks v. Deputy Warden William Powell. I see, Ms. Broccaccini, that you're from D.C., right? So that may explain why you hadn't been at one of my presidings before. I look forward to coming back, Judge. Good morning, Mr. Ramachandrappa. May it please the Court, my name is Naveen Ramachandrappa, and I represent the appellant, Fred Dalton Brooks. In a concurring opinion, Judge Ambrew of the Third Circuit said, quote, We require that prisoners strictly adhere to the procedures of the Prison Litigation Reform Act. It is not too much to ask, then, that non-prisoner parties play by the same rules when those procedures are those of the Federal Rules of Civil Procedure. In this case, Defendant William Powell and the District Court violated two separate provisions of the Federal Rules of Civil Procedure. The first is Rule 12, By not raising exhaustion until his third motion to dismiss, filed more than three years into the case, Powell forfeited his right to argue the affirmative defense of exhaustion. It was stated in the answer, right? It's an affirmative defense that was alleged in the answer? Correct. An answer that came after two prior Rule 12 motions. And the answer, then, was followed by a motion for judgment on the pleadings, right? Correct. A motion for judgment on the pleadings has to come after the answer because it has to be at the close of the pleadings, right? It does. But under this Court's precedent, and Brian first- Are they entitled to raise the defense in their answer? No. No. No. And the reason why is that under- You said this was a waived affirmative defense? Correct. There's an explicit waiver rule in Rule 12, Rule 12-H, right? Correct. And I don't see where exhaustion of remedies is listed in the waiver rules. It's not. It's not. It's not. And the waiver has to be the intentional relinquishment of a known right, right? True. Although I would say it's forfeited. And forfeiture occurs under this Court's precedent, Brian versus Rich, that even when a defense is not listed, is not enumerated, is an unenumerated offense, that this Court said, quote, that is not unusual or problematic. When a court treats a motion as having been brought under Rule 12-B, then it is subject to the rules and practices applicable to the most analogous Rule 12-B motion. So the fact that exhaustion is not listed under Rule 12-H- We have, though, and we don't have any precedent that holds that failure to assert exhaustion as a defense in a Rule 12-B motion would result in a waiver, do we? No. And so, so if we were to do that, if we were to say that, what notice does the government have that that's what's going to happen if they fail to assert it? If we've never, the rule itself doesn't say that, as you've admitted. And no precedent says that. Well, Brian says that. How is this, and how could they be, how could we say that they have intentionally relinquished that known right by failing to assert it earlier? Again, Brian, this Court's precedent where the Court said that even if a exhaustion is raised in a motion for summary judgment, it's treated as though it were brought under Rule 12. Purposes of fact-finding, right? Who is the fact-finder? That was what the argument was about. Is the exhaustion defense something where the findings of fact are made by the judge or by jury? That was certainly part of Brian, but the Court- That's the dispute in Brian, isn't it? It is, but the Court didn't just say that's the only issue we're talking about. The Court incorporated- That's the only holding of the case, isn't it? That is a finding of fact to be made by the district judge. Correct, Your Honor. But the Court instructed, and Courts since have all followed under the federal practice treatise, that when a Court treats a motion has been brought under Rule 12, the analogous rules apply. And the analogy that this Court and other Courts have used is that failure to exhaust is not jurisdictional, not subject matter jurisdiction, but more closely resembles the waivable defenses of personal jurisdiction and venue. So when we're thinking about what notice did the State have that this could be waived, we have Brian that says that it's treated under the analogous rules. We have Rule 12 itself that says that a party that makes a motion under this rule must not make another motion under this rule. And then we have Rule 12H, which says that certain defenses can be waived, even ones that are not listed. And we see the consequences of that in this case. There were other materials submitted in support of the motion for judgment on the pleadings, like declarations or affidavits, something like that. Yes. So really, which would have made it a motion for summary judgment under Rule 56, right? No, because again, under Brian, this Court... It's outside the pleadings. That's the way it has to operate, right? No, under this Court's precedent and cases that have followed since, even if it's, even if materials outside the pleading are raised, it's still treated as a Rule 12 motion. It's treated as one, but Brian recognized, did it not, that it might be actually raised in a motion for summary judgment, but the Court should treat it for purposes of fact-finding as a Rule 12 motion where the trial judge makes the fact-finding. Correct. And Brian explicitly recognized, though, did it not, that it might be raised in a Rule 56 motion, but treat it as a 12 motion for purposes of that fact-finding, right? That's right, but that's also why even admitting... For purposes of waiver. Well, I don't know that Brian drew that distinction, nor could it, because if we're going to give the benefit of having the judge make fact-findings, that means that even if there's materials outside the pleading, it doesn't turn it into a summary judgment motion. It's still a Rule 12 motion decided by the judge, the same way that the judge makes decisions about venue, about personal jurisdiction. I mean, the Brian... And those can all be weighed. The panel said, the Bryant Court said that it's a matter in abatement and that there are a lot of motions that are brought pre-answer and are treated like Rule 12 motions that aren't actually listed in Rule 12 motions for stay, for example, and this is like that, right? Correct, but that's also why the fact that you can bring those motions, even though they're not listed, is why the analogous rules that apply, such as venue... The perfect example and the one I want to... We have any authority where a court has said that one of those other kinds of motions, for example, a motion for stay, abstention, something like that, that's not listed in 12b, that the failure to bring that results along with an early Rule 12b motion, raising an offense that is listed in 12b. A couple of things listed in 12b, 1 and 6, you can bring later. Right, but exhaustion is not one of those. No, of course, exhaustion is not listed there at all, right? That's right. There are some defenses you could raise later. You don't waive by not having raised it earlier, right? Subject matter and failure to state a claim, neither one of which this is. Of course, and 2 through 5 isn't one of these either. Well, it is analogous to those. Of course, you could say it's analogous to 1 and 6 too. But my point is, is there any authority by any federal court that has ever said that your failure to raise something not listed in 12b, 1 through 6, something that's a matter in abatement, that can be brought in a pre-answer motion, is waived for your failure not to bring it then? There are no cases that say in these exact circumstances. But I do want to emphasize that there are two Third Circuit cases where defendants did not raise exhaustion in the district court. And the court held that they were waived because they were tried to be brought up on appeal. And there are numerous other courts that have said that this is just like any other affirmative defense. But those were cases where it was first raised on appeal. Correct. But the fact that you can waive it makes a difference. And as the Supreme Court emphasized in Jones v. Bach, this court should not, and no other court, should depart from the usual practice under the federal rules of civil procedure. And so if it were analogous to a motion for subject matter jurisdiction, then it would have been able to have been raised on appeal for the first time, right? Correct. I'll save the remaining time for a vote unless there's any questions. Good morning. May it please the court, my name is Elizabeth Crowder, and I represent the appellee William Powell in this appeal. There are two primary things going on in this appeal. The first, obviously, is whether or not a Rule 12b motion waives the defense of failure to exhaust under the Prison Litigation Reform Act. Position of the appellee is clearly no. As the appellant's counsel pointed out, this is not a Rule 12 defense. It is not enumerated in Rule 12 anywhere, and there is nothing that says that failure to raise a non-enumerated Rule 12 defense constitutes waiver. Isn't there some prejudice, though, to a petitioner, some potential prejudice here, in that if you don't raise it right away, and you wait until two motions have gone by, now you're on the third one, and this case has been up to our court before, I mean, years go by, and so then it becomes impossible for the petitioner to exhaust his administrative remedies. That seems problematic to me. Tell me, if you would, why that shouldn't be a consideration here. And, I mean, I'm not suggesting that your client purposely tried to manipulate things, but theoretically, that would be something that could be done. If I understand your scenario correctly, I think the prejudice would fall by the wayside based on the policy behind the grievance process and the timing behind when the grievance process has to take place versus a statute of limitations or things of that sort where they could still file a lawsuit. The grievance process that's of record requires that the grievance be filed within 10 days of the date that the instance occurred or the person who ultimately became the plaintiff knew of the circumstances.  In this particular case, but that's not necessarily, I mean, different prisons have different exhaustion procedures, and there may be different steps that have to be taken in those procedures. And so, you know, my question goes to the issue of, is it theoretically possible that doing this, allowing an exhaustion defense to be raised other than the first time a motion to dismiss is made, could prejudice the petitioner in some way? I could concede certainly that in theory it could present itself, but not in the facts of this case. I want to, you mentioned the policies behind requiring affirmative defenses, requiring prisoners to exhaust their administrative remedies, and the Supreme Court talked about that in Porter versus Nestle. And the first is to give the corrections officials time and opportunity to address the complaints internally. I mean, is it your position that in all these years since this event happened, your client hadn't had the time or opportunity to address these complaints? It is our position that this complaint was never raised to our client. There was never a grievance filed. Well, you've been in this same room arguing about this event, so you've known about it for quite some time. Certainly, they were put on notice by the lawsuit that Mr. Brooks filed, but they were not given the opportunity behind the scenes to remedy the problem before the lawsuit was filed, which is the purpose of the grievance process. All right, but you're now asserting it after it's already been to this court, and I mean, you've known about it for some years, and certainly you've had a time or opportunity to address this. But instead, now choose to assert this exhaustion requirement that's provided to you to give you time or opportunity to even know about it. I mean, it seems backwards to me. It doesn't to you. I would concede that procedurally, this case is an anomaly, that it could have been raised before, and it wasn't. But our position is, and as plaintiff's counsel pointed out, under Bryant v. Rich, if there is an unenumerated Rule 12 defense, and you analyze it in the one that it is most like, which the district court in this case. I've got some problems, but in terms of, you know, you want to talk about the purposes served by this requirement, requiring people to exhaust their administrative remedies. One of them is to afford time and opportunity. I mean, I don't think you're arguing you hadn't had time or opportunity. I mean, again, you've known about this for years. Right? Certainly, they were put on notice by the filing of the lawsuit. But the time and opportunity, I want to make sure I understand, is before the filing of a civil complaint in a federal court, right? Correct. Well, okay, since you've known about it. I mean, so once the complaint is filed, you're relieved of any obligation to do anything about it. I mean, is that your position? It would... Because it didn't exhaust it originally? No, it just is designed to put them on notice to avoid the expenses of litigation and going through years of... Okay. To avoid the expenses of litigation. This is your second trip up here, because your client has chosen to make three separate motions to dismiss. How does that avoid the expense of litigation? In this particular case, I would concede that it hasn't. And this, again, I would say is an anomaly. This is not the normal kind of scenario. The consequences of a decision in this case would have an overarching reach towards prison litigation as a whole. And that's our position, is that this kind of thing... But why would it, right? We're not saying that you can't ever raise an exhaustion defense. We're just saying you have to do it in the first motion to dismiss. Why isn't that a reasonable requirement, since it seems to me to be analogous particularly to the venue requirement? And we've said in Bryant that you look to see what it's analogous to under Rule 12. First, I don't believe, and our argument is that it's different from venue. The Supreme Court and this court have both said that failure to exhaust is non-waivable. If you take it and you put it into venue, and they've actually said that unexhausted claims cannot be brought in federal court. You can't go forward if you haven't exhausted those claims. The suggestion that it's like venues takes it and says, if I put it in a different case, if I filed it in a different court, then the outcome would be different. But that's not the case here. The outcome would still be the same,  the venue falls by the wayside. Are you saying that failure to exhaust is not an affirmative defense? Is that your position? No, no. I think that's clear. You acknowledge it is an affirmative defense. I believe Jones v. Bach makes clear that it is an affirmative defense. And affirmative defenses can be waived. They can be waived. If you fail to assert them in a responsive pleading and an answer, and this was in fact preserved in the answer prior to the filing of the motion for judgment. You said a moment ago something that confused me, that I think may be confusing Judge Martin too, which is that, and I think you said this in your brief, it confused me then. You said that the Supreme Court has held that exhaustion is a non-waivable defense. When did the Supreme Court hold that? I don't recall making that statement here or in my brief. If I did, then I misspoke. Certainly under Jones v. Bach, this is an affirmative defense. And 8C makes it fairly clear that you can waive affirmative defenses that are not preserved in pleadings. I want to talk to you about the other purpose of requiring prisoners to exhaust. And again, I'm reading from, I believe it's the Chief Justice's opinion in Porter v. Nussel. Maybe it's not here. It talks about the internal review of going through the exhaustion process, quote, filters out frivolous claims. And of course, that's what you all did. You said this is a frivolous claim. It gets litigated through two levels of federal courts. The panel of this court says this is not a frivolous claim. And so then it goes back and you assert this failure to exhaust. I'm just kind of at a loss about how any purpose associated with requiring prisoners to exhaust their administrative remedies is served by you asserting this at this late date. Can you enlighten me? Well, again, I would say this is procedurally not the best case for this argument. However, that doesn't change the fact that litigation is an evolving process. There may be facts that come to light through the discovery process that were, that maybe were not known or not, the parties were not aware of. In which case, if you make a finding that the failure to exhaust can never be raised after you've made a rule. Did you say you were not aware of it? Do you mean you were not aware that he had not exhausted his administrative remedies? I was not aware. I mean, obviously, I came into this lawsuit late. But the office, what I mean, my point is, I mean, if there are facts in existence about whether or not he asserted his administrative or he went through the administrative process of the prison, I mean, they would be in existence at the time, one way or the other. Right. I mean, they're knowable. If they're knowable today, they were knowable back then. Right. Not in all circumstances. I mean, but certainly there could be circumstances where you would know and neglect to include it in a Rule 12 motion. Yes. Ms. Crowder, I'm looking at page nine of your brief. The case law from this circuit further supports a finding that failure to exhaust cannot be waived. That's the opening page of your argument in the red brief. That's what I was confused about. Are you saying that you don't mean that? I'm not saying that I don't mean that. No.  It can't be waived. It could be waived if you fail to assert it in a response of pleading as an affirmative defense. Okay. That's different from what you wrote, isn't it? I apologize if I misspoke in my brief, Your Honor. I didn't, I didn't, maybe it was a too conclusory statement. That's what you said a moment ago, too. That's what I was asking about. I thought your argument was that it can't be waived. That, that strikes me as not right. No, sir. I agree with you that it could be, but. It just can't be waived by the court is what I think you mean. Certainly. And that is supported in a number of cases from the Supreme Court and also in this circuit. It cannot be waived by the court. It's an affirmative defense. Jones v. Bok makes it clear. Going to be waived, it has to be waived by the defendant. Yes. Well, what about Rule 12 that says, you know, once you bring a motion under this rule, under Rule 12, you've got to, you've got to assert every defense later. I mean, you can't come a second time. Maybe I should just read the language of the rule. You can't come the second time and assert something that was available to you before. A party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but was omitted from its earlier motion. Rule 12G is, I believe, what, Judge? Rule 12G has to be read also in conjunction with Rule 12H, which talks about. There are two exceptions. Right. There are exceptions to Rule 12G that talk about the ones that you can't waive. Our argument is that, as the District Court pointed out, that this is most analogous to subject matter jurisdiction. Well, let's just talk about that for a second, right? Subject matter jurisdiction can't be waived because the court can't decide the merits, cannot decide the merits in the absence of subject matter jurisdiction, right? Yes. But you would agree that in the absence of exhaustion, the court still has jurisdiction to decide the merits if any number of circumstances occurs. For example, that would be futile or there's a waiver or whatever the case may be. Would you agree with me? Yes. Okay. And so the purpose of exhaustion is really, I mean, it's all part of the same purpose of an economy, right? We're trying to allow the state to resolve this complaint before it gets to the federal court to save, it's purposes of comedy, but it's also purposes of litigation expense. We're trying to save that judicial economy. We're trying to, you know, improve judicial economy. Tell me how it improves that purpose of exhaustion for any party to be able to file more than two motions to dismiss when the second motion is something, was exhaustion that they could have filed in the first motion? Because to let the case go further, once they become aware that it has in fact not been exhausted, would incur additional expenses and additional cost of litigation and go all the way through to the very end of the case. Why shouldn't we make you bring it in the first motion to dismiss? I mean, you all know at the time the complaint is filed, whether you know or not, you have the capability of knowing that a complaint has not been exhausted if that's the case. Why shouldn't you have that responsibility to bring it in the first motion to dismiss? Why should we be sitting up here after we've already heard this case before on the merits and now for the first time be addressing exhaustion that you all knew about at the time that this case was filed or that you should have known about? How does that promote judicial economy? It arguably doesn't promote judicial economy, but the fact that it doesn't promote judicial economy doesn't mean that the rules and analogizing the rules under Bryant versus Rich to subject matter jurisdiction doesn't remove the opportunity to do it. Is the point of the exhaustion defense to promote judicial economy? It's not the only. Is that the purpose at all? Pardon? Is it to promote judicial economy or is it to give state prison officials the opportunity to address and resolve matters outside of court without the need of going to court? The obligation of exhaustion is the latter, Your Honor. I have another question. I guess I find this case very upsetting. I mean, here's a man that was in the custody of the state of Georgia, your client. He's raped. He's beat to a pulp requiring his hospitalization. And the facts of that are set out in Judge Marcus's opinion from two years ago now, September of 2015. They're horrific and ought to be an embarrassment to the state of Georgia. And yet, to this day, you and your office are not talking about that. What you're talking about is, you know, what rule can be analogized to what else? I mean, what about Mr. Brooks? I mean, do you admit that those allegations in that complaint are true? No, Your Honor. That was going to be my response. I realize we're required to respond to them. I mean, respond to them. I mean, I don't know what this panel will rule. But it just seems to me if you, you know, the whole purpose of setting up a system where prisons hear from their prisoners so that they can know about problems and correct them if there is a problem. You know, why not go ahead and look, see if there, what the problems were and solve them and address Mr. Brooks's concerns all these years later? I just, I'm baffled by your office's response to this over and over and over. I just, I don't, I mean, I'm curious. I mean, does Chris Carr know this is what you're arguing? Yes. Ms. Crowder, is in your, do you represent wardens frequently? Yes, Your Honor. And so you've had to deal with a number of complaints by pro se prisoners? Yes, Your Honor. Do they always tell the truth? No, Judge. Thank you. I mean, do you have any personal knowledge one way or another what happened in that hospital room? I will only respond if I may by saying that there is evidence in the record as of today that contradicts at least the duration of time that Mr. Brooks was out at Spaulding Regional Medical Center. So a number of days he was in the hospital? Correct, Your Honor. Okay. But nothing that contradicts the allegations that he was made to lie in his own feces and was taunted by the guards? Well, his allegations are that he was made to lie in his own feces for two and a half days. And the evidence... So what was it, two days? No, Your Honor. He was not in the hospital even for a day. Not even for a day? Not even for a full 24-hour period, no. He was, according to the evidence in the record, he was... And it was not provided to go to the merits of the claim. Right. So I want to be very careful in my response. Sure. It was provided as part of the evidence to support whether or not he actually attempted to give a grievance to his counselor, who is Leslie Medlock, and an accompanying affidavit from June Bishop in response to a pleading that talks about where he was housed. And on that same movement history, it indicates that he was out to the hospital overnight. You know, I also... In reviewing the testimony of Ms. Medlock in front of the magistrate judge, you know, she says, I would have accepted a grievance from him about what happened when he wasn't in the prison. Wasn't that generally her testimony? Yes. Of course, in your own pleadings, and the first motion to dismiss and the second motion to dismiss, you say that would have been the responsibility of the hospital. So, I mean, when Mr. Brooks says, I tried to grieve, Ms. Medlock told me I couldn't grieve what had happened to me outside the prison. I mean, there's a theme here. I mean, it shows up in your pleadings, even though now all these years later, you know, she says that's not what happened. I believe what the pleadings are responding to are whether or not his jumpsuit could be lowered so he could use the restroom, not whether or not the conduct of Mr. Powell would be something that he could grieve, even though he was out at the hospital versus within the prison. The conduct of GDC officials can be grieved. I believe that's what they were referring to, is that it could be grieved regardless. But it would be incumbent upon the medical staff to actually remove his jumpsuit and facilitate him going to use the restroom, not on Mr. Powell. Thank you, Ms. Crowder. We have your argument. Mr. Ramachandrappa, you've saved five minutes. May it please the Court. I just want to make a couple brief points about Rule 12. My opposing counsel has said that this is an unusual case and that there are bad procedural facts, and we agree. This is exactly the reason why Rule 12 should be enforced in this case. My concern is, let's assume that we write a rule, though, that ends up applying to a very different case, okay? Sure. It could be that you could have a Rule 12b motion filed quickly and denied, and then an answer filed within weeks, no appeal to us, and an exhaustion defense is raised in the answer. And a holding then, a motion then, while the prison counsel has been searching to make sure that they've searched diligently, they want to make sure whether there was a grievance filed or not, that they have the evidence about that all in line, that we would say that because you didn't raise an unenumerated affirmative defense in 12b sooner, that you've waived it, even though the rule doesn't say that. And Bryant didn't hold that in a case where it moves that a lot faster clip. Could you help me with that? Sure. I mean, the obligation that a defendant assert exhaustion is not an owner's one. I would imagine in almost every case they assert exhaustion. They have the records. If they need more time, then they can ask the court for more time. They can even ask the court to defer a ruling on it. What they can't do is file a motion under Rule 12 that says, dismiss on the failure to state a claim, but then not include exhaustion. Include it, and if they need those concerns, if there's some concern about additional discovery, then they can make it. Erase it promptly, though, under the rules in the answer, right? And then raise a motion soon afterwards. Because they raised an enumerated defense in an earlier 12b motion, you would say waived. Yes, and that's the same thing we do with personal jurisdiction. We do that with venue. Those are all valid defenses that have purposes. But this court and Bryant, I understand that that part of it is dicta, but the plaintiff in that case asked for a jury trial on the issue of exhaustion. Not even the dicta, though, says anything about waiver, right? The point is that this court told prisoners, you cannot have a jury trial on exhaustion because that's a rule 56. And rule circuits held that, right? Correct. And we're going to apply Rule 12 procedures. And Rule 12 says that if you make a motion under this rule, you cannot make another one. And there's a very good reason for that. The advisory committee explains that the required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of the case. There's been no argument from the state that they didn't know the facts. This is the first time I've heard this in oral argument, that there was even any question that they couldn't have argued exhaustion before. They have the records. I mean, that's their own system. The affidavit and declaration they submitted was immediately submitted. Once this case was remanded, there was no reason for delay. If in some other case they have that argument, then they can make that. They can ask the court to defer ruling. They don't have to file a Rule 12 motion if they don't want to. I suspect, again, that in virtually every case they do. And in fact, we know from the record that in cases filed that year against Mr. Powell, he asserted failure to exhaust. He asserted failure to state a claim. So this is not some kind of owner's restriction. What the Supreme Court has instructed is that nothing about the PROA requires departure from the normal rules. And under the normal rules, you can't make multiple Rule 12 motions. And the most similar defense is venue and personal jurisdiction. And so those rules should apply. I do have a question actually on the other issue. As I mentioned, I've read the transcript of the evidentiary hearing in front of the magistrate judge. And I mean, you didn't talk about it in these terms. I'm sure Judge Pryor won't say you waived it. But the Magistrate Judge Act, it says, you know, the district judge can, you know, delegate evidentiary hearings to the magistrate judge. But it says the magistrate judge shall file proposed findings and recommendations with the court and a copy shall forthwith be mailed to the parties. And this magistrate judge never did that. I mean, you didn't know what was going to happen after that evidentiary hearing, did you? No, and that is the perfect encapsulation of our argument. The main violation on the second issue is that the magistrate judge made proposed finding of facts, but didn't enter a recommended disposition from which we could file objections. It went straight from this evidentiary hearing that was supposed to take place before the district court, but instead it was from the magistrate. The district court adopted those. We didn't get an opportunity to rebut that, which is a violation of Rule 72. I thought, though, I think this procedure was irregular and it wasn't followed. But it did seem that it's subject to harmless error analysis. And the problem I had with that was that when it was sent back to the magistrate judge to have that hearing, you were able to object to the credibility findings that the magistrate judge made then and there, right? No, I mean, I don't know what the procedure would be. Do I just stand up and tell the magistrate that he's wrong? I mean, he made credibility findings there, didn't he? He said at the end of the hearing, he said, I'm going to make a few comments, and then he just made them. This wasn't the procedure under Rule 72 where we get to, like, take time, file a response, and the district court gets to look at them. I wasn't even sure whether I should just say, you know, you're wrong for 10 reasons. I, you know, I said instead, you know, we thought this isn't right. But beyond that, that's not the procedure. We're not supposed to guess it to what we're supposed to do. He said this isn't right. But he was saying stuff like, what I write is written on water and stuff like that. And then, so what does that mean? And then you said, I mean, over and over he said, I don't know what Judge Royal is going to do. He can figure out what he wants to do. I assume he'll do this, or maybe he'll do that. I mean, so you didn't know whether you were going to get written findings to object to? That's correct. I thought the magistrate judge, though, had said, for example, I find you to be a credible witness. No, I mean, it's couched in this phrase comments. He just sort of is commenting on what he thought about the witnesses. There was no, I'm making a finding, you have an opportunity to respond. Did he say he wasn't going to write any kind of report and recommendation or anything of that nature that would have tipped you off in any way? No, I mean, he didn't say. I mean, he just said, well, I'm going to make these comments and then go from there. I mean, the perfect example of what would have... I'm looking at page 1496, or I guess it's 122 of 125. I should also say, Mr. Brooks, I find you a reasonably credible witness, except that at one point in his testimony, when the defense was, he goes on to say, only thing I can say is just based on the demeanor. That was one of the particular instances. That looks like credibility findings. Unfortunately, that's something hard to transmit from one judge to the other. I mean, this is what I follow. I look at the rule 72 and I'm supposed to get an opportunity to file it. And I'll just make one last point about why this makes a huge difference. The whole exhaustion dispute is who's telling the truth, Mr. Brooks or Mr. Medlock. And the district court said, well, I don't have any reason to discredit Ms. Medlock's testimony. And based on her demeanor, a demeanor he never saw, and we would love to have filed a brief explaining how Ms. Medlock has made inconsistent statements. And, you know, if you were there and saw the look on her face when we asked her, didn't you tell us that your deposition, you don't remember any grievance? And then at the hearing, she says, well, I do remember one of the grievances. That's the kind of thing that is harmful error, because a fact finder has to make those credibility determinations and they weren't properly made in this case. Thank you, Mr. Brooks. Thank you.